HOPKINS *v.* ORMSBY.

CANCELLATION OF INSTRUMENTS — DEEDS — INCOMPETENCY OF
GRANTOR—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.

On a bill to set aside a deed of land on the grounds of the mental incompetency of the grantor and of the undue influence of the grantees, evidence examined, and *held,* to support a decree for the complainant.

Appeal from Benzie; Chittenden, J. Submitted June 4, 1907. (Docket No. 15.) Decided October 4, 1907.

Bill by Ada J. Hopkins, administratrix of the estate of Sampson P. Jaquith, deceased, against William Ormsby and Eliza Ormsby to set aside a deed. From a decree for complainant, defendants appeal. Affirmed.

*D. G. F. Warner,* for complainant.

*Louisell & Nevius (P. C. Gilbert,* of counsel), for defendants.

MONTGOMERY, J. This is a bill originally filed by the guardian of Sampson P. Jaquith to set aside a deed of a 40-acre description of land made by Sampson P. Jaquith to the defendants on June 2, 1904, on the grounds of mental incompetency of said Jaquith and of undue influence exerted by defendants. After the filing of this bill Sampson P. Jaquith died. By stipulation the complainant, after being appointed administratrix of the estate of Jaquith, was substituted as complainant, the defendants saving any right of objection in the matter of defense. The case was tried in open court and decree rendered in favor of complainant and defendants appeal, and submit the case to the court with the discussion of two questions: *First.* Was Jaquith, on the second of June, when he executed the deed in question, mentally incompetent? *Sec-*

*ond.* Does the testimony justify the conclusion of undue influence ?

In the winter of 1903–4 Jaquith, who was then past 80 years of age, and who had for several years been living by himself on the premises in question, went to reside temporarily with his daughter, Mrs. Hopkins, in the village of Benzonia. He remained there until about the first of May, the defendants at the time, who lived upon an adjoining piece of property, looking after his stock on the farm. About the first of May, Jaquith returned to the farm and the defendants came to live in his house. Before that they had been working some of the land on shares. Under some arrangement for continuing to work the land they became one family. On the second day of June he deeded the land in question for the stated consideration of $50 to the two defendants, and on the same day deeded another 20 acres to two sons of the defendants. The evidence shows that at the time this deed was made Jaquith was sick in bed. His brother who lived a half mile distant, and his daughter who lived in the village, were neither of them apprised of his illness or of the purpose to convey this land. A few days after the deed was made, word was conveyed to Mrs. Hopkins, his daughter and only heir, that her father was ill, and she visited him. She made a number of visits during June, her father getting better of his illness, but no information was conveyed to her either by her father or by defendants in relation to this deed, until about the 19th of July she saw a notice of its record in the county paper.

A good deal of testimony was given pro and con the mental competency of Sampson P. Jaquith at this date. It appears that very shortly after discovering this conveyance, application was made for the appointment of a special guardian and general guardian for Mr. Jaquith. A special guardian was appointed and later on a general guardian. The proceedings relating to this appointment are attacked, on the ground of irregularity amounting to jurisdictional defects. But we do not see how it is im-

portant whether these proceedings were regular or irregular, as appellants' counsel very properly assume the questions involved relate to the validity of the transfer at the time it was made which preceded either appointment.

At the time this deed was made the scrivener who drew it testifies that none were present except himself and the Ormsby family, four of whom received an interest in the conveyance made at the time, and the fifth, a young girl, acting as a witness. The evidence as to what the consideration agreed upon was is very unsatisfactory. The recollection of the scrivener is very vague, and crediting him with entire honesty it may be said that his account of the transaction is of little value. We are satisfied that Jaquith was at this time in a debilitated state; that his mind was so weak as to admit of his being easily imposed upon; he had no counsel from any friend nor any person not interested against him; and there is testimony indicating a studied purpose of withholding information from his relatives and to poison his mind against his daughter. The consideration named in the deed was grossly inadequate, as was the consideration provided by a subsequently (some weeks after) executed life lease back to Jaquith of the same property conveyed by warranty deed.

The circuit judge who saw the witnesses reached the conclusion that this transaction ought not to stand. We think there is ample testimony in the case to justify the conclusion which he reached, and, in view of his better opportunity to judge of the credibility of the witnesses, we are not disposed to disturb the finding which he made.

The decree is affirmed.

CARPENTER, GRANT, BLAIR, and OSTRANDER, JJ., concurred.